[Civ. No. 2184. Third Appellate District.—November 26, 1920.]

JOHN B. CURTIN, Respondent, v. MORAN & COMPANY (a Corporation), Appellant.

[1] CONTRACT — SALE OF CATTLE — SELECTION BY REPRESENTATIVE OF BUYER—MEANING OF PROVISION—PAROL EVIDENCE.—A written contract for the sale of seventy-five cows at seventy-five dollars per head containing the provision that "all stock· for delivery are to be selected by a representative of the buyer," is by such provision rendered uncertain whether the buyer was to select seventy-five head at the price named, or to select such number at that price as the representative of the buyer might desire to accept, and it was therefore proper for the court in an action on the contract to receive parol testimony as to the meaning of the provision.

APPEAL from a judgment of the Superior Court of Tuolumne County. G. W. Nicol, Judge. Affirmed.

The facts are stated in the opinion of the court.

Snyder & Snyder for Appellant.

J. T. B. Warne for Respondent.

HART, J.—This is an appeal by the defendant from a judgment rendered and entered in favor of the plaintiff and against the defendant.

The action arises out of a written contract entered into by and between the parties on June 1, 1919, for the sale of ninety head of cattle by the plaintiff to the defendant.

---

1. Parol evidence to explain mercantile and other contracts, notes, 6 Am. Rep. 678; 28 Am. Rep. 210.

.The said contract provided that the plaintiff would sell to the defendant and that the latter would purchase and receive ninety head of "fat cattle" as follows: Seventy-five head of cows at seventy-five dollars per head; five bulls at seventy-five dollars per head; one bull at twenty dollars and nine head at a price to be later agreed upon or at the time of the selection of the cattle by defendant or its agent. Upon the execution of said contract the defendant paid to the plaintiff the sum of two thousand dollars on the purchase price. The contract further provided:

"All of said cattle to be selected by a representative of the buyer, and the prices hereinbefore stated include delivery F. O. B. cars at Warnerville. All stock for delivery are to be selected by a representative of the buyer in time for delivery as aforesaid. Said seller agrees that he will maintain, feed, and water and care for said stock and deliver them as herein provided, in a fat and merchantable condition, and that he will not deliver any swaybacks, big jaws, dwarfs, or otherwise deformed or unhealthy stock, on this contract, and same shall be free and exempt from state and federal quarantine regulations, and free from all liens and encumbrances whatsoever; also that no stock shall be removed or sold from the above described livestock until after the delivery of all the stock included in this contract, without the written consent of the buyer; all stock to be shrunk per cent and ... . stood hours in a dry pen without .feed or water before weighing, and all stock to be dry² and free from any foreign matter when weighed. These cattle are to be from eighty-four head at Jewel Ranch."

The specific controversy between the parties is as to the seventy-five head of cows which were delivered to the defendant, there being no dispute as to the bulls delivered under the contract.

It appears that the plaintiff is an attorney at law, and that at the time the cattle were selected (on the twenty-fourth day of June, 1919) he was engaged in the trial of a case in the superior court of Alameda County. Because of being so engaged, the plaintiff, by his request, was represented, at the time of the selecting by and delivery of the cattle to the defendant, by his brother, Robert A. Curtin. The testimony shows that, on that occasion, the representative of the defendant selected sixty-five cows from

the eighty-four head of cows at seventy-five dollars per head, and ten of the cows of the eighty-four at forty dollars per head. The nine head at any "agreed price" were not taken by defendant.

The plaintiff claims that the contract expressly and without .qualification called for the payment of seventy-five dollars per head for seventy-five head of cows, and testified that it was understood that the seventy-five head were to be picked by defendant from the eighty-four head of cows owned by plaintiff and inspected by defendant; that the agreement by his brother to accept forty dollars per head for ten of that number of cows was contrary to the terms of the contract and wholly without authority. from him.

The defendant, in his brief, expressly concedes that Robert A. Curtin was without authority to change or modify the terms of the contract or enter into a new one respecting the sale or to agree to receive less for any of the cattle than the amount agreed upon in said contract, but declares that respondent is seeking to read into the contract "a provision that appellant was to pay seventy-five dollars per head for a pick of seventy-five cows out of the eighty-four head in the pasture, and that the remaining nine cows were to be paid 'at agreed price,'" and contends that such is not the contract and that no such construction can be placed upon the contract. It adds, quoting from its brief: "When Mr. Mitchell [the agent and representative of the defendant, in this transaction] and Robert A. Curtin [brother of plaintiff] agreed upon the price of forty dollars per head for the nine head, this became as much a substantive part of the contract as the provision for the payment of seventy-five dollars per head for the seventy-five cows."

[1] The contract in the main appears upon its face to be clear enough, and seems plainly to provide for the sale of seventy-five cows at seventy-five dollars per head, yet the provision that "all stock for delivery are to be selected by a representative of the buyer," etc., throws some obscurity around it and it is by reason thereof not certain whether the buyer was to select seventy-five head of cows at the price named or to select such number at that price as the representative of the buyer might desire to accept. It was, therefore, proper for the court to receive, as it did, parol testimony, not, of course, for the purpose of varying

or modifying the terms of the agreement, but to throw some light on what was meant by the language of the contract above quoted. The plaintiff testified that, at the time the written contract was executed, he exhibited to the representative of defendant, among other cattle, eighty-four head of cows; that it was then and there agreed between them that the defendant might purchase its pick of seventy-five cows out of the eighty-four head in the pasture and that the price would be seventy-five dollars per head for the seventy-five head of cows so picked or selected; that the defendant selected seventy-five head, which were delivered to its representative as agreed, but that when he received the check for the balance assumed by defendant to be due on the purchase price of the entire lot of cattle sold, he found that the check was short of the amount actually due under the contract in the sum of $350.

The court below found the facts in accordance with the testimony of the plaintiff, and that testimony is, of course, sufficient to support the findings as to the transaction.

The contention of the defendant that the agreement by Robert A. Curtin to accept forty dollars instead of seventy-five dollars per head for ten of the cows accepted by defendant "became a substantive part of the contract" is obviously untenable. Not only so, but the contention is plainly inconsistent with the concession of counsel for the defendant made in their brief that Robert A. Curtin was without the authority as agent of his brother to change the contract or to make any different or other arrangements regarding the sale of the cattle than those provided by the contract. Obviously, an agreement by an agent unauthorized by his principal or having no implied or ostensible authority to make it changing the terms of a contract previously made and entered into by the parties cannot become a "substantive" or any part of the contract as it was originally made.

It is not disputed but that the defendant selected and accepted seventy-five head of cows. It is, indeed, directly so admitted by the defendant, and, manifestly, if the representative of the latter concluded, when making the selection, that there were any of the seventy-five head so selected not of the value of seventy-five dollars each, or, for any reason, did not measure up to the provisions of the contract

as to the character or quality or condition of the cattle, he should either have refused for that reason to accept such cattle or, desiring to take them, have negotiated any new agreement or arrangement which he might have thought justly should be made with the plaintiff himself or some other person vested with authority by the plaintiff to change or modify the contract as it was originally made and subscribed to.

Robert A. Curtin was not called as a witness by either side, and the only witness testifying for the defendant was Mills Mitchell, who represented the defendant in the transaction. It is true that Mitchell, in testifying, gave a different version of what was said and the understanding that was had by and between the parties immediately preceding the execution of the written agreement, but thus there was merely produced a conflict in the evidence which, having been resolved by the trial court in favor of the plaintiff, is binding upon this court.

The judgment is affirmed.

Prewett, P. J., *pro tem.*, and Burnett, J., concurred.